## BASIK v. GENERAL MOTORS CORP.

1. MASTER AND SERVANT—FAIR LABOR STANDARDS ACT—BURDEN OF PROOF.
   Employees seeking recovery of additional pay for overtime work under the Federal fair labor standards act have burden of showing that they were, as defendant's employees, engaged in the production of goods within the meaning of the act and that such production was for interstate commerce (29 USCA, §§ 201–219).

2. COMMERCE—FAIR LABOR STANDARDS ACT—OCCUPATIONS.
   An occupation is not to be excluded from the fair labor standards act merely because it contributes to economy or to continuity of production for commerce rather than to volume of production (29 USCA, §§ 201–219).

3. SAME—FAIR LABOR STANDARDS ACT—APPLICABLE TESTS.
   The test of whether one is in commerce is obviously more exacting than the test of whether his occupation is necessary to production for commerce (29 USCA, §§ 201–219).

4. COURTS—CONSTRUCTION OF OPINIONS.
   Words of opinions of a court are to be read in the light of the facts of the case under discussion.

5. MASTER AND SERVANT—FAIR LABOR STANDARDS ACT—LUNCH SERVERS.
   Plaintiff employees who showed they had been engaged in serving lunches to other employees of defendant manufacturer who were engaged in the production of goods for interstate commerce performed work that was a part of an integrated effort for the production of goods, hence they were entitled to recover additional pay for overtime work under the Federal fair labor standards act (29 USCA, §§ 201–219).

Appeal from Wayne; Toms (Robert M.), J. Submitted April 10, 1945. (Docket No. 20, Calendar No. 42,979.) Decided June 5, 1945.

Assumpsit by Steve Basik and others against General Motors Corporation for overtime pay under Fair Labor Standards Act of 1938. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Maurice Sugar, Ernest Goodman* and *Morton A. Eden,* for plaintiffs.

*Henry M. Hogan (Harry S. Benjamin, Jr.,* and *Richard E. Helms,* of counsel), for defendant.

*Douglas B. Maggs,* Solicitor, *Bessie Margolin,* Assistant Solicitor, *Charles A. Reynard,* Regional Attorney, and *George M. Szabad, Westley W. Silvian* and *Flora G. Chudson,* Attorneys, amici curiae.

BUSHNELL, J. The sole question presented in this appeal is whether plaintiffs, during the period from July 1, 1940, to June 10, 1942, inclusive, were engaged in the "production of goods for commerce" as those words are used in the fair labor standards act of 1938 (29 USCA, §§ 201–219), so as to entitle them to the overtime pay benefits provided in the act.

Plaintiff Steve Basik and others were employed in the Fleetwood, Ternstedt and Fisher plants of defendant General Motors Corporation, where goods were produced for commerce during the period mentioned. As cooks, wagon attendants, truck drivers, and kitchen help they handled, prepared, distributed, and served food, et cetera, to other employees who desired to buy their meals, food or drinks in the plants rather than bring them, or eat at some outside restaurant or lunch counter. Defendant owns and operates the cafeteria equipment, lunch wagons, and other facilities in these plants.

The lunch periods vary from 18 to 30 minutes, and there are rest periods of 10 minutes each in the morning and afternoon. Employees do not have time to leave the plants to secure food, nor can all of the employees as a group go out of the plants at one time in order to obtain their lunches.

Plaintiffs produced witnesses in support of their contention that they are engaged in the "production of goods for commerce," one, a physician who is the director of the Research Medical Institute of the UAW-CIO; another, an industrial nutritionist employed by the Office of Distribution of the War Food Administration, who is an experienced dietitian. These witnesses testified, in substance, that fatigue among this class of employees is frequently due to inadequate food, resulting in a lower output and emotional disturbances on the part of workmen, which cause a greater degree of carelessness resulting in a larger number of accidents. The medical witness expressed the opinion that production efficiency is increased from 9 to 15 per cent. if a little food is obtainable between meals. The nutrition expert said there is a direct relationship between frequent feeding of the human body and its muscular efficiency, due to the higher level of body sugar, and that workers who supplement their three meals a day with additional feedings will maintain a higher production level throughout the entire day and, therefore, a higher total production. Defendant offered no testimony to contradict the evidence produced by plaintiffs and stood on the propositions of failure of proof and inapplicability of the Federal act to the facts in the instant case.

This action in assumpsit for overtime pay was heard by a trial judge sitting without a jury, who, in a written opinion, discussed the facts and the authorities he deemed applicable and concluded with the following:

"When all is said and done, the answer to the problem here presented must be found in a practical and common sense appraisal of the nature of the work of the employees involved, in an attempt to discover, without specious inclusion or exclusion, the degree of relationship of their duties to the ultimate production of goods. It could, of course, easily be said that if their services were dispensed with the production of goods would still continue, but that is not the answer to the problem. More to the point is the question: Do their services facilitate or contribute substantially to the production of goods? Are their duties so proximately related to the production of goods as to form an important, even if not an indispensable, factor therein? The court is of the opinion that they are. In the production of goods the fueling of the human beings who operate the machines is just as essential as the fueling of the boilers which run those machines, and it cannot be denied that the feeding of the employees conveniently and quickly and without their being required to leave the plant is an effective step in maintaining production. It seems to the court that it is a factor far more closely linked with actual production than was contributed by the service and maintenance employees in the *Kirschbaum Case*." (*A. B. Kirschbaum Co.* v. *Walling,* 316 U. S. 517 (62 Sup. Ct. 1116, 86 L. Ed. 1638).

The judgment which was entered in varying amounts for the several plaintiffs is not questioned as to its computation. Reversal is sought on the ground that plaintiffs have failed to show by a preponderance of the evidence that their work brings them within the purview of the statute.

Section 3 (j) of the act reads as follows:

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any state; and for the purpose of this chapter an employee shall be deemed to have been engaged

in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any state.

Section 7 (a) reads:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a work week longer than forty-four hours during the first year from the effective date of this section,

"(2) for a work week longer than forty-two hours during the second year from such date, or

"(3) for a work week longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Appellant contends that under the *Kirschbaum Case* the activities of the employees, and not those of the employer, determine the relationship of plaintiffs to interstate commerce, and it quotes from this authority in support of its argument as follows (p. 525):

"We cannot, in construing the word 'necessary,' escape an inquiry into the relationship of the particular employees to the production of goods for commerce. If the work of the employees has only the most tenuous relation to, and is not in any fitting sense 'necessary' to, the production, it is immaterial that their activities would be substantially the same if the employees worked directly for the producers of goods for commerce."

It also argues that the duty is upon the employees to show their relationship to commerce, perhaps be-

cause of the following statement in *Warren-Bradshaw Drilling Co.* v. *Hall,* 317 U. S. 88 (63 Sup. Ct. 125, 87 L. Ed. 83):

"The burden was therefore upon respondents to prove that in the course of performing their services for petitioner and without regard to the nature of its business, they were, as its employees, engaged in the production of goods, within the meaning of the act, and that such production was for interstate commerce."

Was this burden met by showing that plaintiffs served lunches to other employees of defendant who were engaged in the production of goods for interstate commerce?

In the *Kirschbaum Case* the court held that maintenance men and elevator operators were sufficiently related to interstate commerce to come within the act. In the *Warren-Bradshaw Case* it was determined that the burden of proof was sustained by a showing that plaintiffs had drilled oil well holes just short of striking oil, which oil was to be used in interstate commerce.

Plaintiffs cite in support of their position a number of authorities, among which are two circuit court of appeals opinions, the first being *Hanson* v. *Lagerstrom* (C. C. A.), 133 Fed. (2d) 120, where employees of a "cook house" in a Minnesota lumber camp were held to be within the act when the employer was engaged in interstate commerce, and there were no other facilities for eating available to the lumber-camp employees. In the other, *Consolidated Timber Co.* v. *Womack* (C. C. A.), 132 Fed. (2d) 101, another lumber-camp case, the employer operated two separate cook houses, one close to a nearby town, and the other located at a distance from the town so great that the second cook house was the only facility available. Although it was

shown in that case that many of the employees in the one camp were married and ate at home and that less than half of the employees used the one eating facility, yet it was held there was no fundamental difference between that situation and the one where the cook house was the only eating facility, and that all the cook-house employees came within the act. Rebuttal to plaintiffs' argument is offered by defendant in its citation of *McLeod* v. *Threlkeld*, 319 U. S. 491 (63 Sup. Ct. 1248, 87 L. Ed. 1538), where a cook, employed in the preparation of meals for a railroad construction gang, was held not to be engaged in interstate commerce, where he cooked in a car sitting on a siding for a gang working upon tracks located purely within one State.

Our examination of the authorities indicates that the holding in *Armour & Co.* v. *Wantock*, 323 U. S. 126 (65 Sup. Ct. 165, 89 L. Ed. 118), decided December 4, 1944, is controlling. A judgment in favor of private firemen employed by Armour & Company was unanimously sustained, the court saying (p. 130):

"No hard and fast rule will tell us what can be dispensed with in 'the production of goods.' All depends upon the detail with which that bare phrase is clothed. In the law of infants' liability, what are 'necessaries' may well vary with the environment to which the infant is exposed: climate and station in life and many other factors. So, too, no hard and fast rule may be transposed from one industry to another to say what is necessary in 'the production of goods.' What is practically necessary to it will depend on its environment and position."

Further (p. 131):

"An occupation is not to be excluded from the act merely because it contributes to economy or to continuity of production rather than to volume of production."

The case of *McLeod* v. *Threlkeld* was distinguished on the ground that "the test of whether one is in commerce is obviously more exacting than the test of whether his occupation is necessary to production for commerce." It was pointed out that (p. 132):

"It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the court. General expressions transposed to other facts are often misleading."

The conclusion in the *Armour Case* was that employees, putting in stand-by time in the employer's auxiliary fire-fighting service, were engaged in an occupation necessary to the production of goods for commerce, and that, although not decisive, the fact that the employer shows no ostensible purpose for being in business except to produce goods for commerce is entitled to consideration in determining whether employees hired by him are engaged in work which is "necessary" to the production of goods for commerce.

As stated in the *Kirschbaum Case, supra* (p. 520):

"To search for a dependable touchstone by which to determine whether employees are 'engaged in commerce or in production of goods for commerce' is as rewarding as an attempt to square the circle."

We are of the opinion that the situation in the instant case is somewhat analogous to that in the *Armour Case,* and the work performed by plaintiffs is "a part of an integrated effort for the production of goods." Nor can the situation here be distinguished from that in *Walton* v. *Southern Package*

*Corp.,* 320 U. S. 540 (64 Sup. Ct. 320, 88 L. Ed. 298), where the services of a night watchman, employed primarily in order to obtain reduced fire insurance rates, was held to be "a valuable contribution to the continuous production of respondent's goods."

The testimony produced by plaintiffs and the reasoning of the applicable authorities herein cited require affirmation of the judgment. The judgment is affirmed, with costs to appellees.

STARR, C. J., and NORTH, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred with BUSHNELL, J. WIEST, J., concurred in the result.