GUSTAVE HOLLASCH, JOHN KLEIN AND JOHN VAN KER-
SEN, SUING SEPARATELY; WERNER ZIMMERMAN,
ZIGMUNT JANUSEWSKI, CARL McGHEE AND AN-
THONY ANDREYK, AS EMPLOYEES OF MOUNTAIN ICE
COMPANY, PLAINTIFFS, v. MOUNTAIN ICE COMPANY,
A CORPORATION OF NEW JERSEY, DEFENDANT.

Decided June 29, 1948.

For the plaintiffs, *Archibald Kreiger.*

For the defendant, *Nugent & Rollenhagen.*

DAVIDSON, C. C. J.   These actions, tried by the court in
accordance with stipulation of counsel, are brought under the

Fair Labor Standards Act, 29 *U. S. C. A.*, §§ 201, *et seq.*, to recover unpaid overtime compensation, liquidated damages, attorneys' fees and costs. The substantial facts are not in dispute and a narrow issue is presented for determination.

Plaintiffs as employees of defendant, were engaged in the manufacture of ice, which was picked up at the Clifton, New Jersey, plant by trucks of the purchaser and delivered to Botany Mills, Inc., Passaic, New Jersey, a large woolen mill with a payroll of some 5,000 persons, admittedly engaged in the production of goods for commerce within the meaning of the act.

The ice was actually used by Botany, the consumer, to a small extent and for a limited period of time, in water coolers throughout the plant, but primarily for refrigeration of soft drinks in the mill cafeteria and to chill soft drinks carried in food trucks sent through the mill at intervals during the working day. The question to be resolved is whether coverage of the act properly extends to plaintiffs by reason of their employment in the manufacture of the ice so used by Botany.

The pertinent portion of the act extends coverage to employees "engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any process or occupation necessary to the production thereof in any state.*"

The purpose of the act was to eradicate from interstate commerce the evils attendant upon low wages and long hours of service. Being remedial, and having a humanitarian purpose in view, the act is broad and comprehensive and is to be liberally construed in respect of coverage. *Joseph* v. *Ray*, 139 *Fed. Rep.* (*2d*) 409.

It was held in *McComb* v. *Super-A Fertilizer Works, Inc.*, 165 *Fed. Rep.* (*2d*) 824, decided by the United States Circuit Court of Appeals on January 27th, 1948, that:

"As used in Sec. 3 (j) the word 'necessary' cannot be defined with mathematical precision and definiteness. Whether the work of any particular employee is so closely connected with the process of production for commerce as to make his occupation necessary to the production of goods for commerce

**is** a matter of degree. The work must have such a close and immediate tie with the process of production as to be an essential part of it, and to determine whether an occupation is necessary calls for the exercise of that common-sense judgment which the law applies in problems of causation. *Kirschbaum Co.* v. *Walling, supra; Davila* v. *Porto Rico Railway Light and Power Co.,* 143 *Fed. Rep.* (2d) 236 (*C. C. A.* 1st, 1944). The meaning of 'necessary' should not be given an unwarranted rigidity in its application, but should be harmonized with its context and 'no hard and fast rule may be transposed from one industry to another to say what is necessary "in the production of goods." What is practically necessary to it will depend on its environment and position.' *Armour & Co.* v. *Wantock,* 323 *U. S.* 126, 130; 65 *S. Ct.* 165, 167 (1944)."

No fixed and unyielding rule has been blueprinted for determining in every case whether an employee is engaged in the production of goods for commerce, within the meaning of the act. Each case must depend upon its own facts. But there are certain general guides. It is not necessary that the employee come in actual physical contact with the goods produced. It is enough if his work constitutes an essential or useful part of an integrated effort by which goods are produced for commerce. It meets the requirements of the act if the work of the employee has such "close and immediate tie with the process of production for commerce" that it is in effect a part of it. The criterion is necessarily one of degree. *Kirschbaum* v. *Walling,* 316 *U. S.* 517; 62 *S. Ct.* 1116.

Examples of the application of the foregoing rules in specific instances are *Kirschbaum* v. *Walling, supra,* extending coverage to maintenance employees, such as elevator operators, electricians, carpenters, &c., in a loft building occupied by an interstate producer; *Roland Electrical* v. *Walling,* 326 *U. S.* 657; 66 *S. Ct.* 413, extending coverage to those engaged in repairing and servicing electric motors; *Martino* v. *Michigan Window Cleaning Co.,* 327 *U. S.* 173; 66 *S. Ct.* 379, covering employees of a company engaged in cleaning windows of a building used for producing goods for

commerce; *Castaign* v. *Porto Rico American Sugar Refinery,* 145 *Fed. Rep.* (*2d*) 403, covering laundresses employed to wash linen used by employees in a plant producing goods for commerce; *Phillips* v. *Star Overall Dry Cleaning Co.,* 149 *Fed. Rep.* (*2d*) 416, covering laundry employees who supplied linen service to a plant whose employees used the garments while producing goods for commerce; *Basick* v. *General Motors Corp.,* 311 *Mich.* 709; 19 *N. W. Rep.* (*2d*) 142, extending coverage to employees of a cafeteria located on the premises of an automobile factory serving meals to employees, in which case the Supreme Court of Michigan held that those associated with the cafeteria were engaged in an occupation necessary to production for commerce because providing food to employees on the premises was the same as supplying fuel to boilers; and further holding that feeding employees conveniently and quickly and without their being required to leave the plant is an effective step in maintaining production.

In the present case the cafeteria for which ice was furnished was situated within Botany's plant and operated by its own employees, not for the purpose of making a profit, but as part of the company's facilities for maintaining constant and uninterrupted production, the average luncheon allowance being from fifteen minutes to half an hour. The food trucks sent through the plant made it unnecessary for workers to leave their machines, and thus substantially aided in the overall effort of production.

Following the reasoning of the reported cases, my conclusion is that plaintiffs were engaged as part of an integrated effort, in a process or occupation necessary to the production of goods for commerce, within the meaning of the act. As this determination disposes of the issue for the entire periods covered in the several actions, it is unnecessary to pass upon the period during which ice was furnished Harmon Color Works for use in the actual manufacturing process of chemical products for commerce, although it is manifest that coverage extends for the comparatively brief time established in the evidence.

\*  \*  .  \*  \*  \*  \*  \*

*Postea* may be submitted in accordance with these findings.