CENTRAL AGUIRRE SUGAR CO.,
Defendant, Appellant,

v.

Carlos CASTRO et al., Plaintiffs,
Appellees.

Carlos CASTRO et al., Plaintiffs,
Appellants,

v.

CENTRAL AGUIRRE SUGAR CO.,
Defendant, Appellee.

Nos. 6183, 6192.

United States Court of Appeals
First Circuit.

Heard Feb. 4, 1964.

Decided April 8, 1964.

Hector M. Laffitte, San Juan, P. R., with whom Hartzell, Fernandez & Novas, San Juan, P. R., was on brief, for Central Aguirre Sugar Co.

Francisco Aponte Perez, Santurce, P. R., for Carlos Castro et al.

Before WOODBURY, Chief Judge, and MARIS * and ALDRICH, Circuit Judges.

MARIS, Circuit Judge.

These are cross-appeals from a judgment entered in the United States District Court for the District of Puerto Rico in an action brought under the Fair Labor Standards Act of 1938, as amended 29 U.S.C.A. §§ 201 et seq., for the recovery of unpaid minimum wages and overtime compensation.[1] The plaintiffs, who worked in a hotel which included a restaurant,[2] and in a hospital[3] both of which were maintained by the defendant Central Aguirre Sugar Co. in the vicinity of its sugar mill in Aguirre, had been paid the local minimum wages applicable to their respective industries.

The facts were stipulated and may be summarized as follows:

The defendant is engaged in the processing of sugar cane into raw sugar for interstate commerce at its sugar mill located in Aguirre in the Municipality of Salinas, Puerto Rico. It operates an integrated industrial complex, an affiliated agricultural partnership which is engaged in the planting, cultivation and harvesting of sugar cane ground at defendant's mill, an affiliated railroad company which is engaged in transporting sugar cane, raw sugar and other products, and an affiliated company which manufactures raw sugar from sugar cane. Among its personnel it has a staff of executive, professional and technical men, such as engineers, agronomists, accountants, chemists and superintendents. Since 1931 defendant has operated a hotel-restaurant to provide members of this staff and the public with lodging and board. About 10% of the hotel business is with the general public. Its facilities are not available to any of the non-supervisory, production and maintenance employees of the defendant and its affiliates. The hotel is owned by defendant, and not by a separate legal entity, and is operated on a nonprofit basis as an independent department. Defendant pays the hotel employees, and the accounting, clerical and stenographic work of the hotel is performed by the defendant's employees. The operation of the hotel is subject to the direction of defendant's president and executive vice president. There are public hotels and restaurants in the nearby towns of Aguirre, Salinas, Guayama, Santa Isabel and Ponce.

The defendant also owns a hospital, which is not operated by a separate legal entity, but as an independent department whose employees are paid by defendant. The hospital is operated at a loss made up annually by the defendant. Accounting, stenographic and clerical services are provided by defendant. The hospital is managed by a medical director who consults with defendant's president and executive vice president. The hospital was founded in 1931 and provides medical, hospital and surgical services to the employees of the defendant and its affiliated enterprises. These services are provided to defendant's sugar mill employees and their families under a welfare plan provision of a collective bargaining contract signed in 1958. The hospital's services are also used by the

* By special designation.

1. The complaint covered a period of 2 years prior to its filing date, September 2, 1960.

2. The hotel and restaurant employees included waiters, cooks, maids and laundry workers.

3. The hospital employees included orderlies, laundry workers, kitchen helpers and an auxiliary nurse.

general public. There are other hospitals and medical services in the area, including a municipal hospital in Salinas, a public health center in Guayama, and private hospitals in Ponce.

The question whether the plaintiffs were engaged in commerce within the meaning of section 3(j) of the Fair Labor Standards Act, as amended 29 U.S.C.A. § 203(j), was submitted to the district court on the stipulated facts, which included the facts set out in affidavits and answers to interrogatories filed in the case. In an opinion filed September 13, 1962 the district court concluded that the plaintiffs were covered by the Act and, therefore, were entitled to unpaid wages as claimed. Subsequently, hearings were held on plaintiffs' claims for liquidated damages, interest and counsel fees. On June 21, 1963 findings of fact and conclusions of law were filed and a final judgment was entered which directed the defendant to pay $60,040.62 to listed plaintiffs, plus interest from the date of judgment, together with counsel fees in the amount of $15,000.00. From the judgment thus entered the defendant has appealed, at our docket No. 6183. In its judgment the district court denied the plaintiffs' claim for liquidated damages. The employees of the hospital alone have appealed from that determination, at our docket No. 6192.

The defendant's first contention is that the district court erred in concluding that plaintiffs were engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act and were, therefore, covered by the minimum wage provisions of the Act. The district court took the view that "the plaintiffs' work must be examined in a frame of reference that includes the entire operation to which his activities are related, and not limited to an inquiry whether his work is necessary or essential to the production of goods, but rather is there substantial need for it and for defendant's provision for it?" The latter question the court answered in the affirmative on the premise that the fact that since 1931 the hotel-restaurant had been maintained for the convenience of defendant's higher echelon personnel and the hospital had been maintained to provide services to defendant's employees and their families in addition to the general public justified the conclusion that both hotel and hospital answered a substantial need for the defendant's enterprises.

■ We agree with the defendant that the district court applied the wrong test in determining the question whether the plaintiffs are covered by the Act. Section 3(j) of the Act provides in pertinent part:

"(j) * * * for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any closely related process or occupation directly essential to the production thereof,* * * *". [Emphasis supplied] 29 U.S.C.A. § 203(j).

The Act thus requires the plaintiffs to satisfy the court that they are engaged in a closely related process directly essential to the production of goods for commerce, not merely that their activities supply a substantial need of such production. We do not think that the plaintiffs in this case have shown themselves to be thus engaged within the meaning of the Act.

■ Prior to 1949 subsection 3(j) of the Act contained the language " * * * or in any process or occupation necessary to the production thereof". By the Act of October 26, 1949, c. 736, § 3, 63 Stat. 911, this language was amended to read " * * * or in any closely related process or occupation directly essential to the production thereof". It is clear from the legislative history that by this change Congress sought to eliminate marginal and fringe employees which prior cases had held to be covered by the Act, through providing a more precise and

restricted criterion to determine the nature of the relationship which an employee's activities must have to the production of goods in order for him to be regarded as an employee engaged in the production of such goods.[4] In this connection, it was emphasized that "employees engaged in providing residential, eating, or other living facilities for factory workers, are quite clearly not performing any activities that are closely related or directly essential to the production of goods."[5] The Administrator of the Wage and Hour Division of the Department of Labor pointed out that employees are not engaged in work "closely related" and "directly essential" to their employer's production of goods for commerce merely because they "provide a convenient means of meeting personal needs of his employees" who are engaged in the production of goods for commerce for "residential, eating, or other living facilities."[6]

■ It is true, nonetheless, that there may be cases in which the activities of hotel and restaurant employees provide living facilities for employees directly engaged in the production of goods under circumstances where such facilities are essential to assure continued and efficient production of goods, and are therefore so "closely related" and "directly essential" to the production of goods as to be covered by the Act. As illustrations of such activities the Administrator of the Wage and Hour Division has referred to "employees like cooks, cookees, and bull cooks in isolated lumber camps or mining camps, where the operation of a cook-house may in fact be 'closely related' and 'directly essential' or, indeed, indispensable to the production of goods for commerce."[7] As examples the Administrator cited Consolidated Timber Co. v. Womack, 9 Cir. 1942, 132 F.2d 101, and Hanson v. Lagerstrom, 8 Cir. 1943, 133 F.2d 120, and the plaintiffs have, in addition, cited Basik v. General Motors Corporation, 1945, 311 Mich. 705, 19 N.W.2d 142, 159 A.L.R. 966, and Mitchell v. Anderson, 9 Cir. 1955, 235 F.2d 638. It is sufficient to say that in each of these cases the circumstances, including the isolated location of the employer's operation and the need to provide facilities for lodging and meals for the production workers if they were to carry on production, were the bases for the finding that the employees of these facilities were covered by the Act. The cases are thus clearly distinguishable from the present case.

A word may be added regarding the case of Mitchell v. Anderson, 9 Cir. 1955, 235 F.2d 638, since the district court appears to have placed its reliance upon that case in applying the test of "substantial need" to the plaintiffs here. That case involved the coverage of employees of a mess hall and bunk house maintained by the Anaconda Copper Mining Company for the accommodation of some of its male employees in Darwin, an isolated town of less than 150 population located in the Mojave desert of California near the company's Darwin Mine. The mine employed approximately 250 men. Public accommodations in Darwin were meagre. The Court of Appeals appears to have thought, as Circuit Judge Fee insists in his dissenting opinion, that the question to be decided was merely whether there was "substantial need" for the operation of the mess hall and bunk house in carrying on the company's operations. In any event a majority of the court held that these facilities were essential to production and reversed the judgment of the district court which had held the activities of the mess hall and bunk house employees not to be essential

4. See statement of majority of Senate conferees on H.R. 5856, 81st Cong., 1st Sess. 1949, 95 Cong.Rec. p. 14874.

5. Statement of the managers on the part of the House of Representatives on H.R. 5856, H.Rept. No. 1453, 81st Cong., 1st Sess., 2 U.S.Code & Cong.Serv.1949, pp. 2251, 2254.

6,7. Interpretive Bulletin of the General Coverage of the Wage and Hour Provisions of the Fair Labor Standards Act of 1938, as amended, issued May 4, 1950, 29 C.F.R. § 776.18(b), 15 F.R. 2925, 2933.

and hence outside the coverage of the Act. If, as the dissenting judge insisted, the court in Mitchell v. Anderson did apply the test of substantial need, the test which the district court applied in the present case, rather than the "closely related" and "directly essential" test of the present law its decision is not controlling. In any event we think that the case, involving as it did facilities needed to maintain production workers at an isolated operation in a sparsely inhabited desert area, is so clearly distinguishable on its facts from the present case as to furnish no support for the decision of the district court here.

■ In the present case the defendant's hotel-restaurant facilities were not maintained for the workers in the mill. In fact they were not available for those workers but were maintained solely for the convenience of the higher echelon employees, business guests and invitees and members of the general public. Maintaining the hotel-restaurant doubtless serves as a great convenience to these groups but, as we have pointed out, the statute requires that the facilities must be much more a part of the actual operation of the plant than merely to serve "a convenient means of meeting personal needs." The hotel-restaurant may very well have supplied a "substantial need" as the district court concluded, but we think the stipulated facts preclude a finding that the hotel-restaurant employees are engaged in activities which are closely related to and directly essential to the production by the defendant of goods for commerce. We note in this connection that in all the cases to which we have referred the courts concluded that the production of goods would have been affected if the facilities in question had not been provided. The facts in the present case would not support such a conclusion.

■ The district court was equally wrong in its conclusion that the hospital employees were covered by the Act because the defendant had a "substantial need" for the hospital service. In Juarez v. Kennecott Copper Corporation, 1955, 225 F.2d 100, the Court of Appeals for the Tenth Circuit held that the employees of a hospital owned and operated by the Kennecott Copper Corporation at the rim of its open pit copper mine at Santa Rita, New Mexico, were not within the coverage of the Act. The hospital was operated for the company's employees, the members of their families and the members of the public, only 20% of its operations involving caring for employees. The hospital was independently operated by the company and there were ample other hospital facilities in the area. On these facts both the district court and the court of appeals held that the hospital employees were not engaged in a closely related process or occupation directly essential of the production of goods in commerce. We think that Juarez v. Kennecott Copper Corporation is indistinguishable on its facts from the case before us, so far as the defendant's hospital is concerned. See also Huke v. Ancilla Domini Sisters, 7 Cir. 1959, 267 F.2d 96.

We conclude that neither the employees of the defendant's hotel-restaurant nor its hospital employees are engaged in activities so closely related to and directly essential to the production of goods for commerce within the meaning of section 3(j) as to be within the coverage of the Fair Labor Standards Act. The judgment in their favor for $60,040.62 plus interest and counsel fees must accordingly be reversed on this ground. The other grounds urged by the defendant for reversal need, therefore, not be considered. Moreover, since the judgment for the plaintiffs must be reversed in toto the appeal of the hospital-employee plaintiffs, based upon the ground that the district court erred in not awarding them liquidated damages, becomes moot and must accordingly be dismissed.

In No. 6183 the judgment of the district court will be reversed. The appeal in No. 6192 will be dismissed. The parties will bear their own costs.