Lillian KORE, Substituted as party plaintiff in the place and stead of Phillip J. Kore, deceased, Plaintiff-Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 14791.

United States Court of Appeals Seventh Circuit.

March 9, 1965.

John H. Overbeck, Jr., Jerome T. Brennan, and Donald P. Vail, Chicago, Ill., for plaintiff-appellant.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., John Peter Lulinski, Thomas W. James, Frederick E. McLendon, Jr., Asst. U. S. Attys., of counsel, for defendant-appellee.

Before HASTINGS, Chief Judge, and DUFFY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This appeal concerns the interpretation of section 203(f) (1) (D) of the Social Security Act, as amended, 42 U.S. C. § 403(f) (1) (D). The sole issue is whether plaintiff's deceased husband "render[ed] services for wages" during the month of August, 1959 within the meaning of the act so as to preclude him from receiving Social Security benefits for that month. Plaintiff Lillian Kore, substituted as plaintiff for Phillip J. Kore, deceased, petitioned for a review of the Social Security Administration's

decision denying a claim filed by the decedent. The district court granted summary judgment for defendant. Plaintiff appeals.

For many years Phillip J. Kore had been a motion picture operator in Chicago and a member of Chicago Moving Picture Operators' Union, Local 110. The advent of television created adverse business conditions in the motion picture industry. This resulted in the theatre owners' inability to employ all the union members to work a full calendar year. Consequently, in 1953 the theatres and the union agreed to establish the Motion Picture Operators' Beneficial Association. They also agreed that a fixed percentage of the operators' salaries would be contributed by the theatres to a fund held and administered by the association. The principal purpose of this arrangement was to provide benefits, including vacation and industrial adjustment pay, to union members. The association directors determined that the best way to meet the unemployment problem among the operators was to require uniform layoff periods with pay for all members rather than to have some members entirely without work. In order to effectuate the plan, the association's bylaws were amended in 1954 to provide for a five-week vacation or industrial adjustment pay period during 1954 and for such number of weeks as might be needed in future years as determined by the directors in light of the association's funds and the conditions in the industry. In 1959 each union member was laid off for eight weeks in order to provide all members full employment during that year. Under this arrangement Kore was laid off for the month of August and received a check from the association in the amount of $500, representing a $600 payment for the period from July 31 to August 28, 1959, less $100 withholding tax.

In July, 1960 Kore applied for Old-Age Insurance benefits with the Social Security Administration. The application was granted. A Certificate of Social Security Award was issued, indicating Kore was eligible for benefits in the amount of $119 per month effective July, 1959. He was further informed, however, that his estimate of yearly earnings would not permit payment of benefits. Kore disagreed on the ground that he had been unemployed during the month of August, 1959, did not earn any wages for that month, and therefore was entitled to the $119 in benefits for such month.

Under the provisions of the Social Security Act, old age benefits are reduced upon the occurrence of one or more events. One of the events is the receipt of earnings in excess of certain statutory limitations. In computing the benefits, section 203(f) (1) (D) of the act provides that there is to be no reduction for any month in which the claimant "did not engage in self-employment and did not *render services for wages* * * * of more than $100." (Emphasis added.) Admittedly, Kore performed no work during the month in question. Plaintiff therefore contends that her husband did not "render services" within the meaning of the act. She further argues that the payment did not constitute "wages."

Although the term "services" is not defined in the statute, the Supreme Court defined its meaning in Social Security Board v. Nierotko, 327 U.S. 358, 66 S. Ct. 637, 90 L.Ed. 718 (1946). There the Court held that back pay awarded by the National Labor Relations Board in an unfair labor practice proceeding was "wages" under the Social Security Act for the purpose of computing Old-Age and Survivors Insurance benefits. In its decision the Court said: "We think that 'service' * * * means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." Plaintiff attempts to distinguish that case from the present one by first pointing out that the Court there interpreted provisions of the 1935 Social Security Act and then arguing that the legislative history of subsequent amendments to the act requires a different definition of the term "services."

Plaintiff augments her argument by citing a portion of the Senate Report approving a revision of the Social Security Act in 1954.[1] She then says that in light of the original phraseology of section 203(f)(1)(D) and its amendment over the years, a claimant for old-age benefits should not be denied benefits regardless of how much he receives in any month in which he does not actually render services in exchange for wages. She claims this conclusion is required because the words "wages with respect to regular employment" in the 1935 act have been changed now to read "render services for wages."

We are not persuaded by plaintiff's argument that the legislative history renders the Nierotko decision inapplicable. In the same sense that the employee in Nierotko was found to have rendered service after an unlawful discharge, Kore in the instant case rendered service during a month when he performed no actual work. Both employees continued in an unbroken tenure of employment and thus continued to render service although not actually performing any work.

Plaintiff makes the further contention that even were we to determine Kore rendered "services," nonetheless, we must conclude that the payment to him for the month of August, 1959 did not constitute "wages" within the meaning of the act. We think otherwise.

■ The hearing examiner noted in his decision that the contract between the theatres and the union designates the payments placed in the trust fund by the theatre owners as "wages" in the same manner as it does hourly rates to employees. The examiner also found that the payments to the operators from the fund were in lieu of wage increases. Thus as the examiner characterized the arrangement, "the parties considered the additional payments as part and parcel

of the wage package." The by-laws of the association stated that the payments were to be considered as "Vacation Benefits and Industrial Adjustment Pay." We believe there was substantial evidence submitted to the examiner for him to hold that the payment to Kore for the month of August, 1959 was "wages." The fact that payments were from the association rather than from the theatres is immaterial because the latter were the sole contributors to the fund.

■ According to section 209 of the Social Security Act, 42 U.S.C. § 409, "'wages' means remuneration * * * for employment." Section 1026 of the regulations, 20 C.F.R. 404.1026, 1961, promulgated under the act amplifies this provision as follows:

"Vacation allowances—Amounts of so-called 'vacation allowances' paid to an employee constitute wages. Thus, the salary of an employee on vacation, paid notwithstanding his absence from work, constitutes wages."

The legal determination of what constitutes wages within the context of the statute and the regulations is, of course, a judicial function. Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637 (1946). We believe that the Secretary's decision that the payment in question was wages was made in accordance with proper legal criteria. The payment was in the nature of vacation pay, albeit the "vacation" was an enforced one. Mr. Justice Frankfurter's observation in his concurring opinion in Nierotko is pertinent to the question here: "When the employer is liable for back pay, he is so liable because under the circumstances, though he has illegally discharged the employee, he still absorbs his time. * * * In short, an employer must pay wages although, in

1. S.Rep. No. 1987, 83d Cong. 2d Sess. 18 (1954), reads in part:
"Under the new test, wage earners will not lose a benefit each month they earn above a specified amount but will be able to take intermittent full-time work or more regular part-time work than at present without the loss of benefits or with the loss of only a few months' benefits, depending on what they earn." U.S.Code Congressional and Administrative News 1954, p. 3727.

violation of law, he has subjected his employee to enforced idleness."

In conclusion, we hold that the Secretary applied the proper legal standards to the facts of this case and correctly determined that plaintiff's deceased husband did "render services for wages" within the meaning of the applicable statutory provision.

The order of the district court is affirmed.