Lloyd E. SWAFFORD, Plaintiff-Appellant,

v.

The INDUSTRIAL COMMISSION of Missouri and the Members thereof, James J. Butler, Chairman, Carl J. Brown, Member, Lawrence Presley, Member, the Division of Employment Security of Missouri, and General Motors Corporation, a Corporation, Defendants-Respondents.

No. 33867.

St. Louis Court of Appeals, Missouri.

Dec. 22, 1970.

McMath, Leatherman, Woods & Youngdahl, Silas H. Brewer, Jr., Little Rock, Ark. Krings, Stewart, Whipple, Mauer & Eisler, Kansas City, for plaintiff-appellant.

Lloyd G. Poole, Jefferson City, for Respondent Industrial Commission.

Curtis K. Cochell, Lloyd G. Poole, Donald H. Gibson, Jefferson City, for Respondent Division of Employment Security.

Barnard, Timm & McDaniel, St. Louis, for defendant-respondent, General Motors.

SMITH, Commissioner.

Lloyd E. Swafford (hereinafter claimant) seeks unemployment benefits for the week ending February 4, 1968. Such benefits have been refused in turn by a deputy of the Missouri Division of Employment Security, the appeals tribunal of that Division, the Industrial Commission of Missouri and the Circuit Court. The matter reaches us on transfer from the Supreme Court which found it lacked jurisdiction because claimant's constitutional contentions were not raised at the earliest opportunity. 452 S.W.2d 801.

The facts are undisputed and we are presented with a clear question of law involving the interpretation of the Missouri Employment Security Law, Chapter 288.[1] In such posture we are not bound by the determinations of law of the Industrial Commission. Section 288.210, Combustion Engineering, Inc. v. O'Connor, Mo.App., 395 S.W.2d 528.

Prior to the week in question claimant was employed by Fisher Body Division of General Motors Corporation (hereinafter employer) in its St. Louis plant. On January 30, 1968, a Tuesday, employer ceased its operations for the remainder of the week and laid off employee because of a strike against a supplier plant. Employer was in full operation on January 29, but employee was not at his job on that day. He was attending the funeral of his mother-in-law. Under the union contract, which covered employee, he was excused from work that day to attend the funeral and was entitled to receive and did receive bereavement pay from employer in an amount equal to the money he would have received as wages had he worked that day.

Section 288.040(2) provides that an employee to be eligible for benefits must be " * * * able to work and is available for work * * *." The appeals referee (whose findings were adopted by the Commission) referred to that provision and then found: " * * * that the claimant in this appeal was not available for work during the employer's payroll week ending February 4, 1968. To be considered available for work a claimant must be available for work each working day of the week. The evidence shows that the claimant was not in fact available for work on Monday, January 29, 1968, and therefore cannot be considered available for work during that week for the purposes of unemployment benefits."

The Commission urges the validity of this conclusion on the basis that claimant, for a personal reason chose to become unemployed on January 29, and was not available for work that day. It further contends that the statute provides for benefits based solely upon a full week of unemployment and such week is a calendar week. As we understand this contention, developed more at oral argument than by brief, claimant's unemployment week would not in any event commence until the Monday following his layoff.

Respondent, General Motors Corporation, supports the claimant but contends that claimant's "waiting week" commenced on Tuesday, January 30, and claimant became eligible for partial unemployment benefits for the week ending February 11. Claimant contends he is eligible for partial benefits for the week ending February 4, or for waiting week credit for the full week.

1. All statutory references are to R.S.Mo 1959, V.A.M.S.

We find no case in Missouri dealing with the precise issue presented. We must resolve this controversy by reference to the statute enacted by the legislature having in mind the provision of that statute (§ 288.-020(2)) that this law " * * * shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment."

And of course it is incumbent upon us to look at the statute as a whole giving effect to all its provisions if possible and to determine from the applicable provisions the statutory scheme envisaged. We set out in series, but not in numerical order, the statutory provisions dealing with this matter.

Section 288.030, subd. 22.

"(1) An individual shall be deemed 'totally unemployed' in any week during which he performs no services and with respect to which no wages are payable to him;

"(2) An individual shall be deemed 'partially unemployed' in any week of less than full time work if the wages payable to him for such week do not equal or exceed his weekly benefit amount plus ten dollars;

"(3) An individual's week of unemployment shall begin the first day of the calendar week in which he registers at an employment office. * * *"

Section 288.030, subd. 23. " 'Waiting week' means the first week of unemployment for which a claim is allowed in a benefit year."

Section 288.060 * * *

"2. Each eligible insured worker who is totally unemployed in any week shall be paid for such week a sum equal to his weekly benefit amount.

"3. Each eligible insured worker who is partially unemployed in any week shall be paid for such week a partial benefit. Such partial benefit shall be an amount equal to the difference between his weekly benefit amount and that part of his wages for such week in excess of ten dollars * * *."

Section 288.040 * * *

"1. A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that

(1) He has registered for work * * *

(2) He is able to work and available for work; provided, however, that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work;

(3) Prior to the first week of a period of total or partial unemployment for which he claims benefits he has been totally or partially unemployed for a waiting period of one week. * * *

"2. (1) A claimant shall be ineligible for waiting week credit or benefits for any week for which he is receiving or has received remuneration exceeding his weekly benefit amount in the form of

(a) Wages in lieu of notice;

&ast; &ast; &ast; &ast; &ast; &ast;

(2) If the remuneration referred to in this subsection is less than the benefits which would otherwise be due, he shall be entitled to receive for such week, if otherwise eligible, benefits reduced by the amount of such remuneration * * *"

Section 288.034 " 'Employment' means:

(1) Service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied, * * *.

(2) The term 'employment' shall include an individual's entire service, performed within or both within and without this state * * *."

Section 288.036 " 'Wages' means all remuneration payable or paid, for personal

services including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash. Vacation pay and holiday pay shall be considered as wages for the week with respect to which it is payable. * * * "

■ Looking at these sections together we think the statutory plan is clear. The week of unemployment around which the entitlement to benefits hinges and which determines the "waiting week" is a calendar week commencing on Sunday and ending on Saturday. But the statute does not require that the claimant be unemployed throughout the calendar week to qualify for benefits. The legislative intent was to establish a minimum weekly earning level for the employee and where, because of unemployment, the earning level dropped below that minimum to provide benefits sufficient to bring that earning level up to the minimum. The number of days of work or of unemployment is of no concern. The question is whether as a result of unemployment the employee's wages for the week are less than the weekly benefit amount plus ten dollars. If his wages are less, then he is partially unemployed and entitled to partial benefits. And if he is partially unemployed in any week that week serves as his "waiting week" under the specific language of § 288.040, subd. 1. (3). It follows that an employee who is employed for the initial part of a week and thereafter becomes unemployed is entitled to partial benefits or waiting week credit if the wages earned while employed are less than the prescribed statutory maximum.

■ The "available for work" provision of § 288.040, subd. 1.(2) is by its express language applicable only to a claimant who is "unemployed." There is no statutory requirement that such availability must exist throughout the week whether the claimant is employed or unemployed on any given day. On those days during the week when he is unemployed he must be "available for work" and "actively and earnestly seeking work." The findings of the Commission do not base the refusal of benefits on claimant's being unavailable for work on any day except Monday. We cannot conceive that having given partial unemployment benefits to claimants who are unemployed for less than a week, the legislature intended the absurd result of requiring an employee who is employed, to be actively and earnestly seeking employment while still employed in order to qualify for partial benefits when he becomes unemployed.

In view of what we have said, the Commission's action can be supported only if claimant was unemployed on Monday. On that date he was exercising his rights pursuant to his employment contract to be absent from work to attend his mother-in-law's funeral. He was paid in full the amount he would have earned had he been at work. Employer could hardly have contended claimant's absence on Monday constituted a resignation from employment nor would employer have been warranted in discharging claimant for his absence from work. Neither claimant nor employer considered claimant's action in not being at work as a cessation of employment. Under the contract between the parties (employer and claimant) the employment relationship still existed and claimant was employed on Monday.

The Commission contends that under §§ 288.034 and 288.036 employment requires claimant to receive wages for services rendered and that since claimant did not work on Monday he neither performed services nor received wages and was therefore unemployed. This is too narrow a reading of a statute which is to be liberally construed to effectuate its purposes.

In Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718, involving back pay owed to an employee improperly discharged, the Supreme Court held that such pay was wages for services. Dealing with the contention that services require productive activity the Court

stated: "The very words 'any service * * * performed * * * for his employer,' with the purpose of the Social Security Act in mind, import breadth of coverage. They admonish us against holding that 'service' can be only productive activity. We think that 'service' as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." (1. c. 365–366, 66 S.Ct. 1. c. 641). See also Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Gardner v. Travis, 387 F.2d 508 (10 Cir. 1967); Kore v. Celebrezze, 342 F.2d 638 (7 Cir. 1965).

Our legislature has defined wages as "*all* remuneration payable or paid, for personal services." Neither we nor the legislature are unaware that collective bargaining agreements frequently and probably usually, call for certain days of no work for which the employee is fully paid. This is part of his total remuneration for his services to his employer. It is not a gift by the employer, but a negotiated part of the employee's "wages."

■ Nor in approaching this problem must we lose sight of the purpose of the Employment Security Law. Its purpose is to provide a minimal basic support to wage earners whose wages have been terminated or been sharply reduced because of unemployment. It was not intended to provide supplemental income to non-working persons who continue to receive their full wages under some other appellation, nor to prevent the payment of benefits to persons in claimant's position because the pay he received was entitled "bereavement pay" rather than "wages." If the position of the Commission is sound then had the plant closed on Thursday and had claimant received three days bereavement pay (the amount provided under his contract) for Monday, Tuesday and Wednesday in an amount in excess of the statutory maximum, he would still be entitled to total unemployment benefits, if in anticipation of the layoff he had been seeking work commencing on Monday. Such an interpretation conforms to neither the letter nor the spirit of the law and we reject it.

We hold, therefore, that claimant was in the employ of employer on January 29, 1968, and received wages for that day. Being employed on that date, he cannot be disqualified from unemployment benefits (or waiting week credit) for the remainder of the week because he was not actively and earnestly seeking employment on Monday. Claimant is entitled to either partial unemployment benefits for the week ending February 3 (not February 4) or waiting week credit for that week if his wages earned on Monday were less than his weekly benefit amount plus ten dollars.[2]

Judgment reversed and cause remanded to the Circuit Court with directions to remand the case to the Industrial Commission for further proceedings not inconsistent with this opinion.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and cause remanded to Circuit Court with directions to remand the case to the Industrial Commission for further proceedings not inconsistent with this opinion.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.

---

2. His evidence was that he earned $3.45 per hour at the time of hearing and was paid for 8 hours work on January 29. We would presume that he earned less than the prescribed statutory amount. Since there is no evidence or finding of whether this was the first week of total or partial unemployment in the year for claimant and since under § 288.210 we must remand to the Commission for further proceedings in any event, the amount of the benefit need not be determined by us if claimant is entitled to benefits rather than waiting week credit.