**TOBIN, Secretary of Labor v. FAMOUS REALTY, Inc.**

Civ. No. 10226.

United States District Court, E. D. New York.

April 16, 1953.

Henry J. Easton, Asst. Atty., U. S. Dept. of Labor, New York City, for plaintiff.

Joseph S. Wohl, Brooklyn, N. Y., for defendant, Walter Lubarsky, Brooklyn, N. Y., of counsel.

BYERS, District Judge.

This is an action (complaint filed August 26, 1949) under the Fair Labor Standards Act for an injunction against the defendant for failing to make, keep, etc. adequate and accurate records of its employees and the wages, hours and other conditions, etc., of the Act by reason of the allegedly repeated violations thereof, which the plaintiff asserts. The case does not turn upon any issue of failure to pay wages according to the statutory rates.

The requirement as to records, 29 U.S. C.A. § 211(c), is:

"Every employer subject to any provision of sections 201–219 of this title or of any order issued under said sec-

tions shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of sections 201–219 of this title or the regulations or orders thereunder."

The employees of the defendant concerning whom the plaintiff complains of a failure to adhere to the foregoing are:

Watchmen (4);

Electrician (1);

A maintenance man (not in the employ of the defendant when this action was started); and

Office employees.

The principal, if not the only, argument is made concerning the watchmen, and their status is to be understood in light of the following circumstances which are undisputed:

The plaintiff is the owner of a considerable parcel of land fronting on the Brooklyn side of the East River with about 20 buildings, which it leases to various tenants; the extent of the property can be understood by consulting Plaintiff's Exhibit 1.

These several premises are the subject of written leases running from the defendant to the tenants, which are uniform in respect of a provision to the effect that the landlord provides no services whatever in connection with any building or any part thereof; there is no testimony of any departure from that condition with the exception of occasional activities of the maintenance man who was concededly not in the defendant's employ when the complaint was filed.

It is undisputed that many of the tenants are engaged in interstate commerce or in the production of goods for interstate commerce and the character of the occupancy as so described is not the subject of controversy.

Such commerce moves into, through and out of the properties owned by the defendant in motor trucks and freight cars operated by the Jay Street Connecting Railroad, a common carrier engaged in the transfer of railroad cars and contents, which cars arrive on floats at the pier or piers shown on Exhibit 1. That railroad is an entirely separate corporation from the defendant, and rents a right of way from it consisting of land on which the railroad has installed and maintains trackage, switches, loading platforms and equipment and rolling stock. Access to the railroad facilities is obtained directly from city streets adjoining the property, which streets also afford access to other portions of the defendant's property.

The testimony is that the stockholders in the defendant are not the stockholders in the railroad, and the officers are not common to both corporations. It is necessary to keep this distinction in mind because of the obvious effort on the part of the Government to argue (contrary to the proof), that the watchmen in question perform services for both corporations, and therefore the above record keeping requirement should be construed as though there were no legal and substantial distinction between the two corporations.

Since the status of the watchmen is the only material matter in controversy, primary consideration will be given to what the testimony shows concerning them, and the findings will be accordingly restricted.

Findings of Fact.

1. Prior to September 14, 1947, certain of the watchmen now in the employ of the defendant had been in the employ of the Jay Street Connecting Railroad, but that employment terminated on the last mentioned day for reasons concerned solely with the proper and economical administration of the carrier.

2. From and after October 1, 1947 (except as to John Ginaitis who started in September, 1948), the four watchmen who testified in this case, namely William Dennis, James Smith, Paul Slikas and John Ginaitis, were employed by the defendant as night watchmen and their sole duty was

to observe from the outside the various buildings and structures on the defendant's premises during the nighttime so as to detect, if the occasion should arise, the presence of fire and turn in a fire alarm. They did not guard against fires, they merely undertook to report one if it should appear.

3. They had no other duties than as described in the foregoing finding.

4. They were employed by the defendant in the capacity which has been described in order to reduce the fire insurance premiums payable by the defendant in connection with the said buildings and structures.

5. At the time that the watchmen were so employed, they were instructed that they were not to perform any services for the railroad, such as hanging lanterns on gates, opening gates for trains and trucks, and generally acting as watchmen for the railroad property or equipment.

6. Said watchmen were instructed to make rounds during the night at specified intervals, and to make use of signal boxes to record that fact.

7. The said watchmen operate from shanties where they spend most of their time, but their instructions require that they make such rounds not only to afford them a better opportunity for observation than if they were nonperambulating, but also because the requirement itself tends to defeat a natural inclination on the part of a watchman to sleep during the hours of his duty.

8. These watchmen are under no duty, expressed or implied, to observe and protect the merchandise located in any of the buildings on the defendant's property, or in the freight cars on the tracks or sidings or on the loading platforms or other property of the Jay Street Connecting Railroad.

9. In thus maintaining a watch for fires, these employees do not contribute materially or otherwise, to the consummation of transactions in interstate commerce which have their origin or are partly maintained in any of the said several buildings owned by the defendant company.

10. The defendant was not engaged in the production of anything whatever; and therefore the service that these watchmen rendered did not contribute to the maintenance of any productive activity on the part of their employer.

11. The only electrician concerning whom testimony was offered was Bernard Kleunder, who has not been employed by the defendant since about May 10, 1952.

12. The records concerning the hours that he worked and the payments made to him for straight time and overtime, as maintained by the defendant, are not shown to have been erroneous.

13. A maintenance mechanic, R. Bernard by name, referred to in the opening by plaintiff's counsel, is conceded not to have been in the employ of the defendant since before the filing of the complaint herein. No alleged deficiency in the defendant's records concerning him would be material to this cause, nor was any offered.

14. The witness Agnes Curl is an office employee of the defendant, namely secretary to the vice-president of the defendant, and has been so employed since July, 1945.

15. The records indicate as to Miss Curl, and any other office employees, that they actually worked less than forty hours a week, and there has been no attempt to show that they have not received compensation at least equal to that provided in the Fair Labor Standards Act, and there has been no showing that they have not been paid for overtime if any has been earned.

### Conclusion of Law

Plaintiff has not sustained its burden of proof that it is entitled to recover an injunction against the defendant in respect of the matters alleged in the complaint.

### Comment

The entire argument presented by the plaintiff is directed to the watchmen and the cases relied upon have been examined and have not been found to apply to the facts in this cause:

Walling v. Sondock, 5 Cir., 132 F.2d 77. In this case the Administrator sought to en-

join the defendant from violating the Act with respect to the minimum wages paid and the maximum hours worked by its employees in furnishing a detective and night-watch service to various business establishments and residences in the City of Houston, Texas. Thirty-four of the defendants were full-time night watchmen who worked more than the maximum hours and were paid less than the minimum wages prescribed by the Act. Among the defendants' customers were fifty-nine industrial concerns.

The District Court, 43 F.Supp. 339, was of the opinion that the defendants were engaged in furnishing a service, and that the greater part of the activities of the watchmen had to do with intrastate commerce, and that the greater part of the business transacted by its customers was also intrastate, and that within the authorities cited in its opinion, the kind of business in which the defendant detective agency was engaged was not within the Act.

That decision was reversed by the Court of Appeals for the Fifth Circuit upon the theory (a) that the question was to be determined by the character of the duties performed by the watchmen; and (b) if that had "such close and immediate connection with the process of production for commerce as to be an essential part of it, such employee is engaged in the production of goods for commerce within the meaning of the Act" [132 F.2d 78] and that if the employees' services were "part of and contribute materially to the consummation of transactions in interstate commerce, the employee is engaged in commerce as defined by the Act. Upon these principles, those watchmen charged with the protection and preservation of the buildings and machinery used to produce goods for commerce perform duties having an essential relationship to the process of producing and distributing goods in interstate commerce." Upon the authority of Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638, the judgment of the District Court was reversed.

The reasoning above quoted does not apply to the services rendered by the watchmen employed by this defendant according to the testimony which is believed to have been accurately embodied in the findings in this case, for the reason that the mere observation of the exterior of the buildings owned and leased by the defendant has no close or immediate connection with the process of production for commerce as conducted within those buildings; nor can the observations made by these watchmen be thought to contribute materially or otherwise to the consummation of transactions in interstate commerce conducted by the various occupants of the said buildings.

These watchmen can be likened to airplane spotters, whose observations could in no respect contribute to the navigation and operation of the planes which it would be their duty to observe.

The Kirschbaum case, supra, had to do with the owners of loft buildings in which manufacturing operations were conducted, namely the production of goods for interstate commerce, and the employees involved were engineers, firemen, elevator operators, two watchmen, a porter and carpenter, respectively. As to the watchmen, the opinion states: "The watchmen protect the buildings from fire and theft."

This defendant's watchmen do not protect the buildings from anything. In other words, the following comment from the opinion of the Supreme Court does not describe the activities here involved, 316 U.S. at page 524, 62 S.Ct. at page 1120:.

"* * * the employees here are within the Act because they were engaged in occupations 'necessary to the production' of goods for commerce by the tenants. Without light and heat and power the tenants could not engage, as they do, in the production of goods for interstate commerce. The maintenance of a safe, habitable building is indispensable to that activity."

The activities of the various tenants of this defendant are not dependent upon or indeed influenced directly by the presence :

of these watchmen who do not enter, and who might or might not observe a fire which started within their premises.

Russell Co. v. McComb, 5 Cir., 187 F.2d 524, 526. This was again an action to restrain violations of the Act, and the Court says that the question was whether a night watchman employed by the defendant was engaged in commerce or in the production of goods for commerce so as to be covered by the Act. The defendant operated a wholesale grocery business and maintained in connection therewith a warehouse, and purchased and sold merchandise, packed rice and roasted coffee for sale to both wholesale and retail outlets, principally in the State of Mississippi; 85 to 90% of the merchandise came from without the State; and a considerable bulk of its sales, but not the major part, was shipped to Louisiana.

The night watchman was employed to guard the defendant's premises, including the warehouse building and adjacent yards. From the time clock stations, the Court said, that he was able to observe and protect the merchandise located on the freight cars on the spur tracks within the defendant's premises. He was also required to unlock the yard gate for motor freight trucks arriving during the night.

The Court said that the defendant was engaged in interstate commerce and the decision of the District Court was correct that the night watchman was also so engaged in the production of goods for commerce in such degree as to come within the scope of the Act, and that the holding that "the watchman's activities 'contribute so materially and directly to the flow of goods in commerce "as to be in practice and in legal contemplation a part of it" ' is in accord with the prevailing authorities."

It will be recalled that this defendant, unlike that in the above-named case, is not engaged in interstate commerce, and to me it is equally clear that nothing that these watchmen do contributes to the flow of goods in commerce so as to be a part thereof.

Slover v. Wathen, 4 Cir., 140 F.2d 258, 260. This is an action by an employee to recover unpaid minimum wages, overtime compensation, liquidated damages, etc. under the Act, the plaintiff being a watchman on a pier operated by his employers. Apparently it was his duty to guard barges engaged in interstate commerce tied to said pier. Repairs were made at the pier to those barges which were consequently in the custody of the plaintiff's employer, therefore their safekeeping during the night hours was strictly in the pursuit of his employer's business.

The Court decided that:

"Slover, as night watchman for Patapsco, was also admittedly employed to safeguard the barges from fire, theft, storms, leakage or other physical damage while the barges were moored at the pier. It is therefore immaterial that Slover did none of the actual repair work. His acknowledged duties as watchman for Patapsco's premises were so closely related to Patapsco's business of repairing barges that he must be considered as being 'engaged in the production of goods for commerce' within the meaning of the Act."

The Court held that the watchman was engaged in interstate commerce because the barges moved therein, and also in the production of goods for commerce for the reasons stated in the above quotation.

The difference between that employer's business and the business of this defendant is basic.

Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118. This again is an action by employees to recover for overtime, liquidated damages, etc., they being fire guards in the employ of the defendant company which operates a soap factory in Chicago, producing goods for interstate commerce; a fire fighting force is maintained on the premises, and the Court says (referring to the plaintiffs):

"They were not night watchmen, a separate force being maintained for that purpose."

This sufficiently distinguishes the case for present purposes.

Walton v. Southern Package Corporation, 320 U.S. 540, 64 S.Ct. 320, 321, 88 L.Ed. 298. This was an action to recover overtime compensation, liquidated damages,

etc., by an employee against the defendant company which manufactured veneer from logs, a substantial portion of the product moving in interstate commerce.

Walton was a night watchman and his hours exceeded the maximum number prescribed by the Act. It was his duty to make hourly rounds of the plant, punch the night watchman's clocks at various stations, and report any fires and trespassers.

In reversing a judgment for defendant, the Court says of the watchman:

"His duty was to aid in protecting the building, machinery, and equipment from injury or destruction by fire or trespass. The very fact that a fire insurance company was willing to reduce its premiums upon conditions that a night watchman be kept on guard is evidence that a watchman would make a valuable contribution to the continuous production of respondent's goods. 'The maintenance of a safe, habitable building is indispensable to that activity.' A. B. Kirschbaum Co. v. Walling, 320 [316] U.S. 524, 62 S.Ct. 1120, 86 L.Ed. 1638. The relationship of Walton's employment to production was therefore not 'tenuous' but had that 'close and immediate tie with the process of production for commerce' which brought him within the coverage of the Act."

■ Once more it is necessary to remember that this defendant is not engaged in any production whatever, and the night watchmen who look for fires cannot, in my opinion, be described as persons contributing to or playing any part whatever in any interstate commerce, or the production of goods therefor.

The plaintiff argues that the watchmen say they hang lanterns on the one or more gates which swing across certain of the railroad tracks. One of them said that he does so occasionally to warn motor vehicles not to run into the gates which are not entirely visible at night. If that be accepted, it is not a service to the railroad, nor does it promote interstate commerce.

The testimony was not convincing in any case, because it was no part of the employee's duty according to his instructions, and no one seems to argue that the employer is not competent to prescribe the duties for which he pays the watchmen. Incidentally the plaintiff's argument is confined to the question of records rather than that the watchmen are not paid as much as they are legally entitled to receive.

■ More important is the fact that all of them testified that they do not direct traffic of any kind, but that when it seems necessary to open a given gate, they telephone to a Sergeant of the State Police who is in charge of police guards at the defendant's property and he appears in answer to the call, or otherwise issues appropriate instructions. That Sergeant was subpoenaed by the plaintiff, and was present in court on the second day of the trial, but plaintiff's attorney elected not to put him on the stand, from which the inference is irresistible that his testimony would not have been at variance with that of the watchmen.

From the case as a whole, the conclusion is forced upon the Court that the effort to show that the watchmen function for the connecting railroad, and in furtherance of its operations of one kind or another, has failed for lack of proof, and judgment must go for defendant, and it is so ordered.