David **RUTLIN**, Plaintiff,

v.

**PRIME SUCCESSION, INC., and Kerley & Starks Funeral Homes, Inc., jointly and severally, Defendants.**

1:97–CV–868

United States District Court,
W.D. Michigan,
Southern Division.

December 3, 1998.

---

John T. Burhans, Burhans Law Offices, St. Joseph, MI, for Plaintiff.

Neil P. Jansen, Mika, Meyers, Beckett & Jones, PLC, Grand Rapids, MI, Keith A. Dorman, Ross & Hardies, Chicago, IL, for Defendants.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This case is before the Court on the parties' cross-motions for summary judgment and plaintiff's motion for leave to file first amended complaint. In this action, plaintiff David Rutlin filed a complaint pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.*, the Michigan Wages and Fringe Benefits Act ("WFBA"), M.C.L.A. §§ 408.471 *et seq.*, and state contract law claiming unpaid overtime compensation, unpaid "on call" compensation, liquidated damages, costs, and attorneys' fees. The Court has carefully considered the parties' arguments as set forth in their briefs and at the hearing and, for the reasons that follow, defendants' motion for summary judgment is granted in part and denied in part, and plaintiff's motions for summary judgment and for leave to file first amended complaint are denied.

## FACTUAL BACKGROUND

Plaintiff was hired by defendant Kerley & Starks Funeral Homes, Inc. ("K & S") in 1968 as an apprentice to a licensed funeral director. After his apprenticeship, plaintiff worked at K & S from 1969 until October 1997 as a licensed funeral director and embalmer. Defendant Prime Succession, Inc. purchased K & S in 1993.

Plaintiff's duties while he was employed at K & S were wide-ranging. Plaintiff performed embalmings, directed funerals, and was present at burials—all duties which can only be performed by a licensed funeral director/embalmer. Plaintiff also met with and counseled families, arranged visitations and funerals, and removed, dressed and cosmetized bodies. Finally, plaintiff assisted with the general maintenance and operation of K & S by cleaning, answering telephones, washing and waxing funeral home cars, arranging for newspaper notices, setting up chairs, dealing with flower deliveries, and other similar tasks.

During the course of his employment with K & S, plaintiff was paid according to a number of different pay plans. Plaintiff has limited his claims in this case to the time period from 1985 to October 1997. The pay plans used during that time period are:

(1) From November 1974 to February 1995 ("Period I"), plaintiff was paid a salary of $1623.00 every two weeks with no overtime.

(2) From February 1995 to March 1996 ("Period II"), plaintiff was paid on a "fluctuating workweek" plan. Under this plan; plaintiff received $1540.00 every two weeks and some overtime (one-half plaintiff's regular rate) for every hour worked over forty per week. Plaintiff's regular rate for any given week was calculated by dividing his fixed salary by the number of hours worked that week.

(3) From March 1996 to December 1996 ("Period III"), plaintiff was paid on a "guaranteed workweek" plan. Under this plan, plaintiff received $1750.00 every two weeks for all hours worked up to and including sixty hours, and overtime at one and one-half his regular rate for hours worked over sixty per week.

(4) From January 1997 to Mid–April 1997 ("Period IV"), plaintiff was paid a salary of $1750.00 every two weeks without overtime.[1]

(5) From Mid–April 1997 to October 1997 ("Period V"), plaintiff was paid on an hourly basis with overtime at one and one-half

---

1. Defendants assert that plaintiff continued to be paid according to the "guaranteed workweek" plan during this period. Because the Court finds that plaintiff was an "exempt" employee during Periods I through IV, and therefore not entitled to overtime compensation, this difference of opinion is irrelevant for purposes of plaintiff's claims.

times his regular rate for hours worked over forty per week.

In addition to his regular hours, plaintiff was required to work an "on-call" schedule. While on call, plaintiff was responsible for answering the funeral home's phones, which were transferred to his house. Plaintiff and two other funeral directors were on call according to a three week rotating schedule. During the first and second weeks of the rotation, plaintiff was on call from 5:00 p.m. to 8:00 a.m. two nights a week (Monday through Thursday). During the third week of the rotation, plaintiff was on call from Friday at 5:00 p.m. to Monday at 8:00 a.m.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden to demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party carries its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The genuine issue must be "material" in that it must involve facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To establish a "genuine" issue, the non-moving party cannot rest on its pleadings, but must point to evidence in the record upon which a reasonable jury could find for it. *See* Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The non-moving party must show more than a "mere scintilla of evidence" in order to avoid summary judgment. *Id.* at 251, 106 S.Ct. 2505. When determining whether there is a genuine issue of material fact, a court must view the evidence in a light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

## DISCUSSION

### I. Overtime Claims Under Fair Labor Standards Act

■ The Fair Labor Standards Act ("FLSA") requires an employer to compensate an employee for hours worked over forty hours a week at a rate not less than one and one-half times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a). However, employees performing in a "bona fide ... professional capacity" are exempt from this requirement. 29 U.S.C. § 213. The employer has the burden to prove that an employee falls within the professional exemption, *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), and the exemption is construed narrowly against the employer who seeks to assert it. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Michigan Ass'n of Gov't Employees v. Michigan Dept. of Corrections*, 992 F.2d 82, 83 (6th Cir.1993).

The regulations implementing the FLSA define the requirements for the professional exemption, and include both a "long test" and a "short test." 29 C.F.R. § 541.3. The short test for the professional exemption has both a "salary" and a "duties" component. The salary component requires that the employee is compensated on a salary or fee basis at a rate of not less than $250 per week. 29 C.F.R. § 541.3(e). The duties component requires that the employee has as his primary duty work that involves the consistent exercise of discretion and judgment and that consists of:

> (1) Work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes ...

29 C.F.R. § 541.3(a). Defendants in this case argue that plaintiff satisfies this short test, and therefore is an exempt professional under the FLSA.

## A. Periods I through IV

■■■ During Periods I through IV, plaintiff satisfies the short test for the professional exemption. First, plaintiff fulfills the salary component because he was paid on a salary basis at a rate not less than $250 per week throughout the Periods I through IV. An employee is paid on a "salary basis" if "under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118. Additional compensation, over and above the "predetermined amount," is specifically permitted by the regulations and does not affect an employee's salaried status. *See* 29 C.F.R. § 541.118(b). This is the case even if the additional compensation takes the form of pay at an hourly rate for each hour worked beyond an employee's regular schedule. *See Michigan Ass'n of Gov't Employees v. Michigan Dept. of Corrections*, 992 F.2d 82, 84 n. 3 (6th Cir.1993).

During Periods I and IV, plaintiff admits to being paid a salary in an amount not less than $250 per week. During Period II, plaintiff was paid according to a "fluctuating workweek" plan. Under this system of payment, plaintiff received a predetermined amount ($1540 every two weeks) regardless of how many hours he worked. In addition, plaintiff was paid some overtime for any hours worked over forty per week. Therefore, plaintiff was paid on a "salary basis" during Period II.[2] Finally, in Period III, plaintiff was compensated according to a "guaranteed workweek" plan. Under this plan, plaintiff received a set amount ($1750 every two weeks) regardless of how many hours he worked. For any hours worked over sixty per week, plaintiff received additional overtime compensation. Therefore, plaintiff was also paid on a "salary basis" during Period IV.

■■■ Second, plaintiff satisfies the duties component for the professional exemption.

Defendants correctly assert that plaintiff's work required "knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study." 29 C.F.R. § 541.3(a). As a funeral director and embalmer, plaintiff had to be licensed by the state. In order to become licensed, plaintiff had to complete a year of mortuary science school and two years of college, including classes such as chemistry and psychology, take national board tests covering embalming, pathology, anatomy, and cosmetology, practice as an apprentice for one year, and pass an examination given by the state.

Defendants also claim that plaintiff exercised "discretion and judgment," as is required for the professional exemption. *See* 29 C.F.R. § 541.3(e). This claim is supported by the nature of plaintiff's duties, including counseling grieving families, and removing, embalming and cosmetizing bodies, and by the fact that plaintiff was often unsupervised in those duties. While plaintiff gained expertise in his work over the course of his employment, such expertise does not change the professional nature of plaintiff's work, or eliminate the discretion and judgment plaintiff exercised in performing his duties. As one court recognized and this Court agrees, "the difficulty and sensitive work of a funeral director/embalmer clearly requires the exercise of discretion and independent judgment." *Szarnych v. Theis–Gorski Funeral Home, Inc.*, 1997 WL 452681 (N.D.Ill.), *aff'd* 1998 WL 382891 (7th Cir. 1998).

■■■ Finally, defendants' claim that plaintiff is an exempt professional employee despite the fact that he spends 50% or more of his time on duties that do not require a license. What constitutes an employee's "primary duty" for purposes of the professional exemption is determined based on the totality of the circumstances in that case. *See* 29 C.F.R. § 541.103. While the time spent on particular duties is considered,

---

2. Both defendants and plaintiff indicate in their briefs that plaintiff was not paid on a salary basis during this time period. However, given the mechanics of the "fluctuating workweek" plan, which the parties do not dispute, the Court finds that, under that payment plan, plaintiff was paid on a "salary basis" as that term is defined in 29 C.F.R. § 541.118.

"time alone ... is not the sole test." *Id.* The relative importance of the professional duties as compared to other duties, the frequency with which the employee exercises discretion, and the employee's relative freedom from supervision are all relevant considerations. *Id.* The employee's primary duty is usually the one that is of principal importance to the employer, rather than the collateral tasks which may occupy the majority of his time. *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1227 (5th Cir.1990); *Reich v. State of Wyoming*, 993 F.2d 739, 742 (10th Cir.1993).

In this case, plaintiff did perform numerous non-licensed tasks around the funeral home. He answered phones, cleaned, did office work, prepared bodies for viewing, counseled families, and arranged for visitations and funerals. Plaintiff was hired, however, as a licensed funeral director/embalmer. As a result, his licensed duties, even if comprising less than 50% of the time he worked, were relatively more important that his other duties, and were of principal importance to the defendants. In addition, the fact that plaintiff exercised discretion and was often unsupervised supports the defendants' assertion that plaintiff's primary duty was professional in nature.

For the above reasons, the Court finds that plaintiff was an exempt professional employee during Periods I through IV, and therefore was not entitled to overtime compensation under the FLSA.[3]

### B. Period V

■ Plaintiff did not qualify as an exempt professional employee during Period V, because he did not satisfy the salary component of the exemption test. During this time period, plaintiff was paid on an hourly basis, and therefore is entitled to overtime for all hours worked over forty per week. Accordingly, the Court grants plaintiff's motion for summary judgment on the issue of his non-exempt status during Period V.

It is undisputed that defendants ultimately paid plaintiff all overtime due during this period, although a portion was not paid until

after the commencement of this action. Therefore, the Court awards summary judgment to the plaintiff sua sponte with regard to his FLSA claim for overtime during Period V. The amount of damages defendants owe plaintiff, if any, as a result of their untimely payment shall be determined in subsequent proceedings.

### II. "On Call" Compensation Claims

■ Plaintiff asserts that defendants violated the FLSA by failing to pay him for the hours he spent "on call." The Supreme Court has held that when the time spent is "predominantly for the employer's benefit," waiting time is compensable. *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136, 65 S.Ct. 161, 89 L.Ed. 124 (1944). If an employee spends his on call time at home, it is only compensable when "the restrictions imposed are so onerous as to prevent [him] from effectively using the time for personal pursuits." *Martin v. Ohio Turnpike Commission*, 968 F.2d 606 (6th Cir.1992). The Courts have considered various factors to determine to what extent being on call interferes with the employee's private life in a particular case. Such factors include whether the employee can carry a beeper or leave home, the frequency and nature of the calls, the flexibility of the on call schedule, and whether the employee actually engaged in personal activities while on call. *See, e.g., Berry v. Sonoma County*, 30 F.3d 1174, 1183 (9th Cir.1994); *Ingram v. County of Bucks*, 144 F.3d 265, 268 (3rd Cir.1998).

In this case, plaintiff was required to answer the funeral home's phones, which were redirected to his house, during his on call time. Plaintiff admits that he could usually swap on call schedules with another funeral director in order to accommodate his plans, and that he could forward the phones and be reached by a pager if he had to leave home while on call. Plaintiff states that on average he received between 15 and 20 phone calls a night, taking up about one hour of his time,

---

**3.** The Court will not address plaintiff's motions for summary judgment and for leave to file first amended complaint regarding whether defendants wilfully violated or engaged in a continuing violation of the FLSA. Because the Court

finds that plaintiff was an exempt professional employee and therefore not entitled to overtime pay under the FLSA, the foregoing motions are moot.

while he was on call. Sometimes plaintiff would be required to make other phone calls in response to the calls he received. Also, plaintiff received, on average, one "death call" per week. A death call required the plaintiff to leave home, pick up the hearse, remove the body, and return the body to the funeral home. Plaintiff clocked in and out, and was compensated, for the time he spent on a death call. Finally, plaintiff stated that he was able to engage in personal activities while on call, including watching television, computing, talking on the phone with friends and family, engaging in activities with his wife, and going out to dinner. Given these facts, it is apparent to the Court that plaintiff's on call time was not "so onerous" as to prevent him from engaging in personal pursuits. See Martin, 968 F.2d at 611. Plaintiff had flexibility in his on call schedule, and the ability to leave his home. The phone calls plaintiff received, though fairly frequent, rarely involved calls to duty, or death calls. Finally, plaintiff was able to engage in a significant number of personal pursuits while on call. For these reasons, the Court finds that plaintiff's on call time is not compensable under the FLSA.

### III. MICHIGAN WAGES AND FRINGE BENEFITS ACT CLAIMS

■ Plaintiff claims that defendants violated the Michigan Wages and Fringe Benefits Act ("WFBA"), M.C.L.A. §§ 408.471 et seq., by failing to pay him overtime. The WFBA does not create an independent right to overtime compensation. Instead, the WFBA only regulates the time and manner in which overtime must be paid. Because the Court finds that plaintiff was not entitled to overtime in any manner or form other than was actually paid to him during Periods I through IV, as discussed in sections I.A. and IV. of this opinion, the Court concludes that plaintiff's claims under the WFBA for that time period are without merit. Accordingly, defendants' motion for summary judgment on plaintiff's WFBA claims for this period is granted.

■ With regard to Period V, however, it is undisputed that defendants failed to pay plaintiff a portion of the overtime wages owed him in a timely manner. While plain-

tiff has not been clear in articulating the basis for his claims under the WFBA, the defendants failure to make timely payment may support a claim under the section of the WFBA relating to pay periods. See M.C.L.A. § 408.472. For this reason, the Court denies defendants' motion for summary judgment regarding plaintiff's WFBA claims for Period V.

### IV. STATE LAW CONTRACT CLAIMS

■ Finally, plaintiff asserts that defendants breached a contract with him, created by "letters, payroll stubs, and other documents," by failing to pay him overtime for hours worked in excess of forty hours per week. In fact, there is no record evidence to support such a breach of contract during Periods I through IV. Plaintiff stated that he understood he was a salaried employee not entitled to overtime from 1974 until 1997 (Periods I through IV). Plaintiff testified that he figured out the "fluctuating workweek" pay plan (Period II) with its overtime system within a few weeks of its implementation. Plaintiff also testified defendants explained the "guaranteed workweek" plan (Period III) and its overtime provisions prior to its implementation. Plaintiff's testimony indicates that he understood the methods by which he was being paid, and refutes his argument that some other contract for overtime payment existed.

■ Plaintiff points to defendants' written policies/handbooks as evidence of a contract requiring overtime payment. These policies state that defendants will pay non-exempt employees overtime. Because plaintiff was an exempt professional employee, as discussed earlier, defendants' policies regarding non-exempt employees do not create a contract entitling plaintiff to overtime compensation. Therefore, the Court finds that there was no contract between plaintiff and defendants requiring the payment of overtime in any manner other than was actually paid during Periods I through IV.

■ During Period V, a contract did exist that required defendants to pay plaintiff overtime compensation at one and one-half times his regular rate for hours worked over forty per week. This contract is evidenced

by a letter dated April 4, 1997 from defendants to plaintiff. While defendants ultimately paid plaintiff all overtime owing under this pay plan, defendants did not pay 4.75 of those overtime hours until after plaintiff filed his complaint. For this reason, the Court finds that defendants breached their contract with plaintiff during Period V by failing to timely pay him 4.75 hours of overtime. Accordingly, the Court awards summary judgment to plaintiff sua sponte with regard to plaintiff's state law contract claim for Period V. The issue of damages with regard to this claim will be addressed in subsequent proceedings.

## V. CONCLUSION

For the reasons stated above, the Court finds that:

(1) Plaintiff was an exempt professional employee during Periods I through IV of his employment with defendants, and therefore is not entitled to overtime compensation for those periods;

(2) Plaintiff was not an exempt professional employee during Period V;

(3) Plaintiff's on call time was not compensable under the FLSA;

(4) Plaintiff's claims under the WFBA for Periods I through IV are without merit;

(5) Plaintiff's state law breach of contract claim is not supported by the record evidence for Periods I through IV; and

(6) Defendant breached its contract with plaintiff during Period V.

An order consistent with this opinion shall issue forthwith.