BRISCOE, Circuit Judge,
concurring and dissenting:
I concur in part and dissent in part. With respect to the jurisdictional question, I conclude we can reach the issues raised by plaintiffs in their cross-appeal not through the exercise of pendent appellate jurisdiction, but rather because those issues were addressed by the district court in the single order which it certified for appeal pursuant to 28 U.S.C. § 1292(b). As for the merits of the issues, I agree with the majority that neither the split shift period nor plaintiffs’ commuting time prior to the first shift or after the last shift of each day is compensable under the FLSA. I disagree with the majority, however, that shuttle time occurring during the split shift period (i.e., after the first and before the second shift of each calendar day) is compensable under the FLSA.
Jurisdiction over plaintiffs’ cross-appeal
It is uncontroverted that plaintiffs did ' not seek, and thus were not granted, permission to file an interlocutory appeal from the district court’s certified order. See Fed. R.App. P. 5(a). Therefore, we must determine whether that failure deprives us of jurisdiction to decide the issues raised in plaintiffs’ cross-appeal. The majority, relying on the doctrine of pendent appellate jurisdiction, concludes it does not. In my view, this is the right result for the wrong reason.
To the extent the doctrine of pendent appellate jurisdiction still exists in light of Swint v. Chambers Co. Comm’n, 514 U.S. 35, 50-51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (rejecting exercise of pendent appellate jurisdiction for purely pragmatic considerations), it allows an appellate court “with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appeal-able.” Id.; see Moore v. City of Wynne-wood, 57 F.3d 924, 930 (10th Cir.1995) (concluding notwithstanding Swint, “pendent appellate jurisdiction might still be appropriate where the otherwise nonap-pealable decision is ‘inextricably intertwined’ with the appealable decision, or where review of the nonappealable decision is ‘necessary to ensure meaningful review’ of the appealable one”). By definition, then, the exercise of pendent appellate- jurisdiction requires at least one ruling that is independently appealable and one that is not.
The problem here is that all of the issues raised by the parties, including those asserted in plaintiffs’ cross-appeal, were independently appealable. In particular, all of the issues were contained in a single order which was certified by the district court for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Had plaintiffs timely *1122 sought permission to file an interlocutory appeal, we clearly would have had an independent basis to authorize their appeal, even absent the City filing an appeal. Thus, I am not persuaded the doctrine of pendent appellate jurisdiction is a proper vehicle for exercising jurisdiction over the issues asserted by plaintiffs.
The answer ultimately lies, I believe, in the scope of our appellate jurisdiction under § 1292(b), which allows a district court to certify for immediate appeal “an order not otherwise appealable” if the district court is “of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate términation of the litigation.” (Emphasis added.) As this statutory language makes clear, “appellate jurisdiction applies to the order certified to the court of appeals.” Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Thus, although we “may not reach beyond the certified order to address other orders made in the case,” we “may address any issue fairly included within the certified order.” Id.; see 16 Charles A. Wright et al., Federal Practice and Procedure § 3929, at 388 (2d ed. 1996) (“The court may ... consider any question reasonably bound up with the certified order, whether it is antecedent to, broader or narrower than, or different from the question specified by the district court.”); Note, Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b), 88 Harv. L.Rev. 607, 628-29 (1975) (“scope of review [includes] all issues material to the order in question”).
The district court order here was issued October 23, 1997, and contained language certifying the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In accordance with the time limits and procedures outlined in Fed. R.App. P. 5(a), the City sought, and was granted, permission to file an interlocutory appeal. As a result, we have jurisdiction over the entire order and may address, in our discretion, any issue “fairly included” therein. Because the issues asserted in plaintiffs’ cross-appeal were “fairly included” in the order and have been exhaustively addressed by both parties in their appellate briefs, and resolution of those issues would benefit the parties and the trial court by materially advancing the ultimate determination of this case, I would exercise our discretion and decide those issues at this time.
In reaching this conclusion, I recognize Rule 5 does not expressly contemplate cross-appeals. See Bronk v. Mountain States Tel. & Tel., Inc., 140 F.3d 1335, 1337 n. 4 (10th Cir.1998). This has not, however, prevented this court or other circuit courts from exercising jurisdiction over interlocutory cross-appeals. See Nelson v. American Nat’l Red Cross, 26 F.3d 193, 196 (D.C.Cir.1994); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994); Armstrong v. Executive Office of the President, 1 F.3d 1274, 1290 (D.C.Cir.1993); Cheyenne-Arapaho Tribes of Okla. v. U.S. Dept., of Interior 966 F.2d 583, 584 (10th Cir.1992); Meriwether v. Coughlin, 879 F.2d 1037, 1041 (2d Cir.1989); Burnette v. Dresser Indus., Inc., 849 F.2d 1277, 1278 (10th Cir.1988); but see Tranello v. Frey, 962 F.2d 244, 248 (2d Cir.1992) (cross-appellant’s failure to file petition for permission to cross-appeal within ten days of § 1292(b) certification was jurisdictional defect that barred court of appeals from hearing cross-appeal). Further, Wright has offered persuasive reasons for adopting “a more relaxed approach to cross-appeal requirements” in the context of § 1292(b) appeals. Wright, supra, at 393. In particular, “[n]o justifiable expectations of repose or finality attach to an interlocutory district court ruling, which can be changed by the district court itself at any time before final judgment.” Id. at 394. I agree that, in deciding what issues to address in the context of a § 1292(b) appeal, we “should be concerned only that all par *1123 ties have had adequate notice of all issues to be argued and decided, and that the record affords a secure basis for decision.” [1] Id.
Compensability of split shift periods
I agree with the majority that the split shift periods are not compensable under the FLSA. I would add only that one of the Department of Labor’s implementing regulations, 29 C.F.R. § 785.16(b), provides the following example which is similar to the case at hand:
[I]f [a] truck driver is sent from Washington, DC to New York City, leaving at 6 a.m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6 p.m. when he again goes on duty for the return trip the idle time is not working time. He is waiting to be engaged.
Like the truck driver in the example, plaintiffs here cannot be considered to be working during their split shift periods occurring between their two shifts. Rather, as the uncontroverted facts indicate, they are free to do as they wish, and are simply “waiting to be engaged.”
Compensability of shuttle time
In determining whether plaintiffs’ shuttle time is compensable under the FLSA, the obvious starting point is the Portal-to-Portal Act, 29 U.S.C. § 251 et seq., which Congress passed in 1947 as an amendment to the FLSA. Prior to enactment of the Act, the Supreme Court interpreted the FLSA as requiring payment of compensation to employees “for such activities as walking from the factory gate to the workbench, and changing into work clothes.” Reich v. New York City Transit Auth., 45 F.3d 646, 649 (2d Cir.1995) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692-93, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). Concerned with this interpretation, Congress passed the Act to protect employers from responsibility for paying compensation to employees for commuting time, as well as for activities considered preliminary and postliminary to the employees’ principal activities. See id. at 649; see also Imada v. City of Hercules, 138 F.3d 1294, 1296 (9th Cir.1998). In particular, the Act makes it unnecessary for an employer to compensate an employee for time spent “walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform,” when the walking, riding, or traveling occurs “either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.” 29 U.S.C. § 254(a).
Here, as explained in the majority opinion, the Act clearly applies to time spent by plaintiffs traveling (by whatever method they choose, including the shuttle) from the city garage to relief points prior to the first, and subsequent to the second, shift of each calendar day. In particular, such travel time is “to and from the actual place of the performance of [plaintiffs’] principal activity” (i.e., to and from relief points where plaintiffs perform their job of driving buses), and occurs “either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity.” 29 U.S.C. § 254(a).
Shuttle time occurring after the first, and before the second, shift of each day is more difficult to analyze. Unlike the shuttle time that occurs at the beginning and end of each day, this shuttle time occurs in the middle of the day and within the split shift period. Thus, it must first be determined whether this shuttle time occurs during plaintiffs’ “workday” for purposes of the Act. If the time occurs during the *1124 “workday,” the Act does not apply and we must resort to general principles outlined in the FLSA to determine its compensability.
Curiously, the majority suggests shuttle time occurring during the split shift period is not covered by the Act because it is part of plaintiffs’ “principal activity.” I am puzzled by this suggestion for several reasons. First, plaintiffs have never asserted shuttle time occurring during the split shift period is part of their “principal activities” for purposes of the Act. Indeed, the parties are in agreement, and the uncontro-verted facts demonstrate, plaintiffs’ “principal activity” is limited to driving city buses. Further, and perhaps most importantly, the majority offers no explanation of why shuttle time occurring during the split shift period is analytically different from shuttle time occurring before the first or after the second shift of each day (i.e., why one is part of plaintiffs’ “principal activities” while the other is not). In my view, none of the shuttle time is part of plaintiffs’ “principal activities” for purposes of the Act.
I now turn to the question of whether the split shift period shuttle time falls within the Act’s definition of “workday.” As noted, this question is important because the Act expressly governs only travel time that occurs prior to commencement, or subsequent to cessation, of an employee’s principal activities on “any particular workday.” 29 U.S.C. § 254(a). Likewise, the Department of Labor’s implementing regulations provide the Act’s provisions regarding travel time “do[ ] not affect the computation of hours worked within the ‘workday’ proper, roughly described as the period ‘from whistle to whistle.’ ” 29 C.F.R. § 790.6(a).
Unfortunately, the Act does not define “workday.” ■ Although the Department of Labor’s implementing regulations provide the following definition, it does not completely answer the question posed by this case:
“Workday” as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee’s principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period. For example, a rest period or a lunch period is part of the “workday,” and section 4 of the Portal Act therefore plays no part in determining whether such a period, under the particular circumstances presented, is or is not compensable, or whether it should be included in the computation of hours worked. If an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his “workday” commences at the time he reports there for work in accordance with the employer’s requirement, even though through a cause beyond the employee’s control, he is not able to commence performance of his productive activities until a later time. In such a situation the time spent waiting for work would be part of the workday, and section 4 of the Portal Act would not affect its inclusion in hours worked for purposes of the Fair Labor Standards Act.
29 C.F.R. § 790.6(b). The majority suggests “workday,” for purposes of the FLSA, is comprised of a single 24-hour period. This cannot be correct. Employees in various industries routinely work varying shifts from day to day, oftentimes with two shifts occurring within a single 24-hour period (depending upon when the 24-hour period is measured). For those workers and their employers, application of the majority’s “single 24-hour period” definition would result in inconsistent application of the Portal-to-Portal Act’s exemption for commuting time to and from work. For example, consider a restaurant worker who works a 6:00 p.m. to 2:00 a.m. shift on Monday, followed by a 10:00 a.m. to 6:00 p.m. shift on Tuesday. Under the majority’s definition of “workday,” the worker’s commute time before her Monday *1125 shift and after her Tuesday shift would fall within the Act’s exemption for commuting time, but her commute time after her Monday shift and before her Tuesday shift would not since the two shifts fall within the same 24-hour time period.
In my view, the only viable definition of “workday” is a period of work (i.e., a period in which an employee is engaged in his or her principal activities) separated on either side by a sufficient amount of off-duty time (e.g., six-eight hours). Unlike the “single 24-hour period” definition (or a “single calendar day” definition), this definition would successfully accommodate all work arrangements, including those in which an employee works two shifts within the same calendar day, or within a single 24-hour period. Applying this definition to the facts at hand, plaintiffs would not be considered to have two “workdays” each calendar day since their two daily shifts are not separated by a sufficient amount of off-duty túne. Thus, I agree with the majority that the Act’s exclusion for commuting time does not apply to shuttle time occurring during the split shift period.
Because plaintiffs have only one “workday” each calendar day, the resolution of the City’s appeal must be determined under the general principles of the FLSA without reference to the Act. The Supreme Court has defined “work,” for purposes of the FLSA, as “physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.” Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944). The Court has also concluded waiting or down time may constitute “work” for purposes of the FLSA because “[r]efraining from other activity often is a factor of instant readiness to serve” an employer. Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944). Ultimately, the question of whether a particular activity constitutes work for purposes of the FLSA depends upon whether the time in question “is spent predominantly for the employer’s benefit or for the employee’s.” Id. In deciding-this question, the Department of Labor’s implementing regulations suggest a significant factor is whether the time at issue can be effectively used by the employee for his own purposes. See 29 C.F.R. §§ 785.15, 785.16, 785.17.
The Department of Labor also has several regulations addressing “travel time.” As a general matter, the regulations provide the unhelpful guidance that “[t]he principles which apply in determining whether or not time spent in travel is working time depend upon the kind of travel involved.” 29 C.F.R. § 785.33. “Normal travel from home to work is not worktime.” 29 C.F.R. § 785.35. This conclusion is arguably derived from the fact that commuting time from home to work (and vice versa) is spent predominantly for the employee’s benefit (and can be used in any manner seen fit by the employee— e.g., stops can be made along the way for errands, etc.). In addition, “[tjime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.” 29 C.F.R. § 785.38. In connection with this latter principle, the regulations provide the following example:
If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer’s premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer’s premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

Id.

Applying all of these principles to the case at hand, I conclude shuttle time occurring during the split shift period is not compensable working time for purposes of the FLSA. It is true the bus route system was devised by the City to serve its own *1126 interests. See Anderson, 328 U.S. at 691, 66 S.Ct. 1187 (time spent by factory workers walking from time clock to workstations was “dependent solely upon the physical arrangements which the employer made in the factory”). In this respect at least, the shuttle time benefits the City because it does not have to redesign its bus route system to allow all routes to end at the city garage. On the other hand, and more convincingly in my opinion, it is uncontroverted that plaintiffs are free to do as they wish when they complete a route and are not required to either return to the city garage or to use the shuttle system. Likewise, plaintiffs are free to arrive at a relief point by whatever means they wish (e.g., shuttle, driving their own car, riding with a relative or friend, etc.). Because the decision to ride the shuttle is wholly voluntary, the fact that the drivers’ activities are limited while on the shuttle (due to their presence on a moving vehicle) is immaterial. Plaintiffs perform no tasks for the City during the actual shuttle time. I conclude the time is primarily for the benefit of plaintiffs.
In deciding otherwise, the majority views this case as though plaintiffs are required to start and end each shift at the city garage and to use the shuttle system as their sole means of transportation between the garage and relief points. Further, the majority creates a false distinction between drivers who ride the shuttle and drivers who choose to perform other activities during the split shift period (e.g., walking or driving back to the garage, shopping, going to a library, etc.). Under the majority opinion, although all drivers have discretion concerning how they spend their split shift period, only those drivers who ride the shuttle are entitled to extra compensation. Not even drivers who choose to return directly to the garage by other means are entitled to extra compensation even though their commute time is virtually indistinguishable from drivers who return to the garage by shuttle. In my opinion, the majority has created an incentive for all drivers to use the shuttle system because a driver who opts to take the shuttle will accumulate more compen-sable hours each week and will be entitled to more pay. The majority has also created an incentive for the City to completely eliminate the shuttle system to reduce the size of its payroll. Lastly, the majority decision creates as many questions as it answers. What about a driver who, after completing his or her first shift, chooses to shop for an hour and then return to the garage by shuttle? Is that shuttle time compensable under the FLSA? Or a driver who, after completing his or her first shift, visits a library for several hours and then rides the shuttle directly to his or her next relief point?
I would affirm all of the district court’s rulings except its conclusion that shuttle time occurring during the split shift period is compensable.

. Obviously, a party contemplating an interlocutory ''cross-appeal” can avoid many of the problems raised in this case by simply filing its own request under Rule 5(a) for permission to file an interlocutory appeal.